CENTER FOR DISABILITY ACCESS
Raymond Ballister Jr., Esq., SBN 111282
Russell Handy, Esq., SBN 195058
Amanda Seabock, Esq., SBN 289900
Zachary Best, Esq., SBN 166035
Josie Zimmermann, Esq., SBN 324511
Mail: 8033 Linda Vista Road, Suite 200
San Diego, CA 92111
(858) 375-7385; (888) 422-5191 fax
josiez@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Brian Whitaker**<br><br>Plaintiff,<br><br>**v.**<br><br>**Brender Commercial Land Holding LLC,** a California Limited Liability Company;<br><br>**Brender Lodging LLC,** a California Limited Liability Company;<br><br>Defendants, | **Case No**. 5:21-cv-01125-BLF<br><br>**Second Amended Complaint For Damages And Injunctive Relief For Violations Of:** Unruh Civil Rights Act |

Plaintiff Brian Whitaker complains of Brender Commercial Land Holding LLC, a California Limited Liability Company; Brender Lodging LLC, a California Limited Liability Company; ("Defendants"), and alleges as follows:

**PARTIES:**

1.  Plaintiff is a California resident with physical disabilities. He is substantially limited in his ability to walk. He suffers from a C-4 spinal cord injury. He is a quadriplegic. He uses a wheelchair for mobility.

1

2.   Defendant Brender Commercial Land Holding LLC, a California Limited Liability Company owns the Coronet Motel located at 2455 El Camino Real, Palo Alto, California currently and at all times relevant to this complaint. Defendant Brender Lodging LLC, a California Limited Liability Company operates the Hotel currently and at all times relevant to this complaint.

3.   Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of other Defendants are ascertained.

**JURISDICTION:**

4.   The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

5.   Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

6.   Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

2

**PRELIMINARY STATEMENT**

7.   This is a lawsuit challenging the reservation policies and practices of a place of lodging. Plaintiff does not know if any physical or architectural barriers exist at the hotel and, therefore, is not claiming that that the hotel has violated any construction-related accessibility standard. Instead, this is about the lack of information provided on the hotel's reservation website that would permit plaintiff to determine if there are rooms that would work for him.

8.   After decades of research and findings, Congress found that there was a "serious and pervasive social problem" in America: the "discriminatory effects" of communication barriers to persons with disability. The data was clear and embarrassing. Persons with disabilities were unable to "fully participate in all aspects of society," occupying "an inferior status in our society," often for no other reason than businesses, including hotels and motels, failed to provide information to disabled travelers. Thus, Congress decided "to invoke the sweep of congressional authority" and issue a "national mandate for the elimination of discrimination against individuals with disabilities," and to finally ensure that persons with disabilities have "equality of opportunity, full participation, independent living" and self-sufficiency.

9.   As part of that effort, Congress passed detailed and comprehensive regulations about the design of hotels and motels. But, as importantly, Congress recognized that the physical accessibility of a hotel or motel means little if the 61 million adults living in America with disabilities are unable to determine which hotels/motels are accessible and to reserve them. Thus, there is a legal mandate to provide a certain level of information to disabled travelers.

10.   But despite the rules and regulations regarding reservation procedures, a 2019 industry article noted that: "the hospitality sector has largely overlooked the importance of promoting accessible features to travelers."

11. These issues are of paramount important. Persons with severe disabilities

3

have modified their own residences to accommodate their unique needs and to ameliorate their physical limitations. But persons with disabilities are never more vulnerable than when leaving their own residences and having to travel and stay at unknown places of lodging. They must be able to ascertain whether those places work for them.

**FACTUAL ALLEGATIONS:**

12. Plaintiff planned on making a trip in January of 2021 to the Palo Alto, California, area.

13. He chose the Coronet Motel located at 2455 El Camino Real, Palo Alto, California.

14. Due to Plaintiff's condition, he is unable to, or seriously challenged in his ability to, stand, ambulate, reach objects, transfer from his chair to other equipment, and maneuver around fixed objects.

15. Thus, Plaintiff needs an accessible guestroom and he needs to be given information about accessible features in hotel rooms so that he can confidently book those rooms and travel independently and safely.

16. On January 18, 2021, while sitting bodily in California, Plaintiff went to the Coronet Motel reservation website at http://www.coronetmotel.net/ seeking to book an accessible room at the location.

17. This is the hotel's website and it is owned and operated by the Defendants, or run by a third party on behalf of the defendant and supplied with information from the defendants, and it permits guests to book rooms at hotel.

18. Plaintiff found that there were two big problems with booking an accessible room.

19. First, the only room identified as accessible in the hotel's reservation website is called: "One queen bed with ADA access, 1st floor." But this room cannot be booked. It is not actually made available. For every single day from now until

the end of the open booking window (currently in August of 2021), that sole accessible room is not available. See most recent hotel website images:



20. Plaintiff, therefore, alleges that the hotel does not have an accessible room among inventory made available to transient guests.

21. Second, beyond the naked label "accessible," the hotel does not describe or provide any details of accessibility features related to the entrance doors, bed, desk, or sink in the accessible guestroom. This is frustration and puzzling as the hotel does provide this information for the shower, noting that it is a roll-in shower, with folding seat, grab bars and a hand-held shower wand. Apparently, the hotel believes that the only features that needs to be described is the shower.

22. The plaintiff, however, needs to know more in order to make an assessment of whether the hotel room works for him.

23. Plaintiff needs doorways that are at least 32 inches wide so he can get his wheelchair through. Without this feature, Plaintiff risks getting stuck in a doorway, or being prevented from passing through the doorway at all. The website does not mention that the hotel room has this feature.

Second Amended Complaint                                         5:21-cv-01125-BLF

24. Because Plaintiff is in a wheelchair and must transfer from his chair to his bed, he needs to know that there is the ADA-required maneuvering space (30 inches wide) at the sides of the bed so that he can use the bed. Here, the hotel says nothing about how space is around the bed.

25. Plaintiff has had tremendous difficulty with using lavatory sinks in the past because sinks were cabinet style sinks or had low hanging aprons that did not provide knee clearance for a wheelchair user to pull up and under or, alternatively, where the plumbing underneath the sink was not wrapped with insulation to protect against burning contact to his knees. Here, the Hotel reservation website provides no information about the accessibility of the sinks in the accessible guestroom.

26. Plaintiff has had tremendous difficulty using desks and tables that did not provide knee and toe clearance for a wheelchair user to pull up and under the table/desk. Plaintiff eats and works at the guestroom desk and this is critical information for him. Here, the Hotel reservation website provides no information about the accessibility of the table/desk in the accessible guestroom. This leaves Plaintiff unsure he will be able to use the table/desk in the Hotel room.

27. Plaintiff does not need an exhaustive list of accessibility features. Plaintiff does not need an accessibility survey to determine of a room works for him. Plaintiff, like the vast majority of wheelchair users, simply needs a handful of features to be identified and described with a modest level of detail to make an independent assessment of whether the "accessible" hotel room works for him. These things comprise the basics of what information is reasonably necessary for Plaintiff (or any wheelchair user) to assess independently whether a given hotel or guest room meets his or her accessibility needs.

28. The combination of lack of information and not actually making the accessible guestroom available for rent to transient guests created difficulty for the Plaintiff and precluded him from booking a room at the Hotel

29.  Plaintiff frequents businesses to determine if they have complied with the anti-discrimination mandates of the ADA.

30.  As a veteran ADA tester, Plaintiff is aware that he needs to return to the hotel website and to patronize the hotel in order to have standing to see that the hotel comes into compliance with the ADA's mandate regarding its reservation policies. Thus, plaintiff will use the hotel's website reservation system to book a room and travel to the hotel when it has been represented to him that the hotel's website reservation system is accessible. Plaintiff will be discriminated against again, i.e., be denied his lawfully entitled access, unless and until the defendant is complies with the law.

31.  Plaintiff has reason and motivation to use the defendant's hotel reservation and to stay at the defendant's hotel in the future. Among his reasons and motivations are to assess these policies and facilities for compliance with the ADA and to see his lawsuit through to successful conclusion that will redound to the benefit of himself and all other similarly situated.

32.  Plaintiff routinely revisits and uses the facilities and accommodations of places he has sued to confirm compliance and to enjoy standing to effectuate the relief promised by the ADA.

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code §51-53)

33.  Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.  The Unruh Civil Rights Act ("Unruh Act") guarantees, inter alia, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishment of every kind whatsoever within the jurisdiction of the State of California. Cal. Civ. Code §51(b).

34. Under the Americans with Disabilities Act ("ADA"), it is an act of discrimination to fail to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges advantages or accommodations to person with disabilities unless the entity can demonstrate that taking such steps would fundamentally alter the nature of those goods, services, facilities, privileges advantages or accommodations. See 42 U.S.C. § 12182(B)(2)(A)(ii).

35. Specifically, with respect to reservations by places of lodging, a defendant must ensure that its reservation system, including reservations made by "any means," including by third parties, shall:

      a. Ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;

      b. Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs; and

      c. Reserve, upon request, accessible guest rooms or specific types of guest rooms and ensure that the guest rooms requested are blocked and removed from all reservations systems.

*See* 28 C.F.R. § 36.302(e).

36. Here, the defendant failed to modify its reservation policies and procedures to ensure that it has accessible rooms for rent and that it identified and described accessible features in the hotels and guest rooms in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel

or guest room meets his or her accessibility needs and failed to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms.

37. The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code, § 51(f).

38. Defendants' acts and omissions, as herein alleged, have violated the Unruh Act by, inter alia, failing to comply with the ADA with respect to its reservation policies and practices.

39. Because the violation of the Unruh Civil Rights Act resulted in difficulty and discomfort for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. *See* Civ. Code § 52(a).

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000 for each offense.

2. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code § 52(a).

Dated: September 6, 2021                    CENTER FOR DISABILITY ACCESS

                                            By: /s/Josie Zimmermann
                                            Josie Zimmermann
                                            Attorney for Plaintiff

9